Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MUNICIPIO AUTÓNOMO DE MANATÍ, REPRESENTADO POR SU ALCALDE, EL HON. JOSÉ A. SÁNCHEZ GONZÁLEZ<br><br>Apelados<br><br>V.<br><br>F.D.R. 1500, CORP.<br><br>Apelante<br><br>BANCO POPULAR DE PUERTO RICO COMO SUCESOR EN INTERÉS DE WESTERNBANK PUERTO RICO, AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO, DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES, JOHN DOE<br><br>Partes con Interés | KLAN202400346 | *Apelación* procedente del Tribunal de Primera Instancia Sala de Arecibo<br><br>Caso Núm.: SJ2022CV04304<br><br>Sobre: Expropiación Forzosa |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Adames Soto, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 31 de julio de 2024.

El **8 de abril de 2024**, F.D.R. 1500 Corp. (en adelante, FDR Corp. o parte apelante) compareció para que revoquemos la Sentencia parcial emitida el 24 de enero de 2024 por el Tribunal de Primera Instancia Sala Superior de Arecibo (en adelante, TPI),[1] la cual fue objeto de una solicitud de reconsideración el 9 de febrero de 2024, pero fue denegada el 6 de marzo de 2024.[2] Allí, el TPI

---
[1] La Sentencia parcial fue notificada y archivada el 25 de enero de 2024.
[2] La Orden fue notificada y archivada el 7 de marzo de 2024.

declaró *Con Lugar* una *Moción de Sentencia Sumaria Parcial* presentada por el Municipio Autónomo de Manatí (en adelante, MA-Manatí, parte apelada o municipio) en la que resolvió que la expropiación forzosa para la adquisición de unos terrenos ubicados en el Sector Mar Chiquita, Barrio Tierras Nuevas Salientes de Manatí, Puerto Rico, tiene un fin público.

El **15 de mayo de 2024**, el MA-Manatí presentó el *Alegato de la Parte Apelada.*

Perfeccionado el recurso de apelación, procedemos a **confirmar** la Sentencia parcial apelada por los siguientes fundamentos.

-I-

El **24 de mayo de 2022**, el MA-Manatí presentó una petición de expropiación forzosa para la *"adquisición en pleno dominio de 54,899.1466 metros cuadrados en el Sector Mar Chiquita, Barrio Tierras Nuevas Salientes del Término Municipal de Manatí, Puerto Rico".*[3] Una vez el municipio cumplió con los requisitos de ley para la expropiación forzosa,[4] depositó en el TPI la cuantía de $767,000.00 en concepto de justa compensación. Junto con dicha petición, presentó una solicitud para que el tribunal ordenara la adquisición y entrega material de la propiedad a dicho municipio.

---

[3] Véase, la Ordenanza Núm. 20, Serie 2021-2022, PRN-18(4). Además, la petición de expropiación forzosa se presentó bajo el procedimiento establecido en los artículos 1.008(c), 2.017, 2.018 y 2.019 la Ley Núm. 107-2020, según enmendada, "Código Municipal de Puerto Rico", las Reglas de Procedimiento Civil y la Ley de 12 de marzo de 1903, según enmendada, "Ley General de Expropiación Forzosa".

[4] Entre otros, el MA-Manatí cumplió con los requisitos que imponen las ante citadas leyes y reglas: **(1)** legajos, la identificación de la propiedad y partes con interés; **(2)** Certificación de Propiedad Inmueble de 17 de mayo de 2022; **(3)** Plano de mensura de 10 de diciembre de 2021 preparado por el agrimensor licenciado Dennis O. Vargas González; **(4)** Informe de Valoración con fecha de efectividad de 15 de junio de 2021 del evaluador autorizado Eduardo Robles Carrillo; **(5)** Informe de Revisión de 14 de febrero de 2022 del tasador Manuel A. Bermúdez Pagán; **(6)** Plan Sectorial de Mar Chiquita, Manatí, adoptado el 9 de diciembre de 2016 por la Junta de Planificación y aprobado el 27 de diciembre de 2016 por el Gobernador de Puerto Rico; **(7)** Orden Ejecutiva OE-2016-033; y, **(8)** la Ordenanza Núm. 20, Serie 2021-2022, PRN-18(4), para: *"Autorizar al alcalde a adquirir la titularidad de la propiedad Finca Núm. 3017, inscrita en el Folio 175 del Tomo 570 de Manatí, Registro de la Propiedad de Manatí, que ubica en barrio Tierras Nuevas Salientes, Sector Mar Chiquita del Municipio de Manatí, mediante el proceso de expropiación forzosa y a suscribir la declaración para la adquisición y entrega material de ésta; para derogar la Resolución Núm. 97, Serie 2018-2019; y para otros fines".*

El **7 de julio de 2022**, el Departamento de Recursos Naturales y Ambientales de Puerto Rico (en adelante, DRNA) presentó una comparecencia especial y proveyó su anuencia a la petición de expropiación forzosa, según presentada por el MA-Manatí.

En respuesta a la solicitud de expropiación forzosa del MA-Manatí, el **24 de agosto de 2022** la parte con interés FDR Corp., presentó su Contestación a la Petición. En síntesis, adujo la inexistencia de un fin público legítimo que justificara la expropiación forzosa. Además, que la cuantía depositada no cumplía con los requisitos constitucionales de una justa compensación por la expropiación.

Luego de emplazadas las partes con interés y haber evaluado los sendos escritos legales sometidos por las partes, el **31 de agosto de 2022** el TPI emitió una Resolución y concedió la adquisición y entrega material de la propiedad al MA-Manatí. Dicha Resolución otorgó al municipio el título de dominio de la propiedad desde el momento en que se presentó la petición de expropiación forzosa y se consignó la compensación.

Inconforme, FDR Corp., recurrió ante el Tribunal de Apelaciones (en adelante, TA) mediante un recurso de *certiorari*. El **5 de diciembre de 2022**,[5] el TA emitió una Resolución y denegó el recurso presentado.

Tras haber concedido a las partes una amplia oportunidad para intercambiar su prueba, el **31 de agosto de 2023** el TPI dio por finalizado el descubrimiento de prueba. Por lo cual, el **1 de septiembre de 2023**, el MA-Manatí presentó una *Moción de Sentencia Sumaria Parcial*, al amparo de la Regla 36 de las de Procedimiento Civil.[6] En síntesis, solicitó que se determinara como

---

[5] Notificada el 6 de diciembre de 2022.
[6] 32 LPRA Ap. V., R. 36.

un hecho incontrovertido la existencia de un fin público en la expropiación forzosa.

No obstante, y luego de mociones y varios trámites procesales, el **13 de noviembre de 2023** el TPI dictó una Resolución en la que denegó una solicitud de FDR Corp., para que paralizara los procedimientos de expropiación por existir un proceso administrativo pendiente ante el DRNA. Así, el foro *a quo* se expresó:

> [i]ndependientemente de los derechos que le pueda asistir a la demandada en el proceso administrativo de la delimitación de la zona marítimo-terrestre en la finca en controversia, el procedimiento de expropiación está limitado únicamente "por la exigencia de que el bien sea para un fin público y el Estado pague una justa compensación. Culebra Enterprises Corp. v. E.L.A., 127 DPR 943, 952 (1991).

La anterior Resolución fue recurrida por FDR Corp., ante el TA mediante un recurso de *certiorari,* el cual, fue denegado el **15 de diciembre de 2023**.[7]

Resuelto lo anterior, el **20 de diciembre de 2023** FDR Corp., presentó la *Oposición a Moción de Sentencia Sumaria Parcial.*

En atención a la solicitud de sentencia sumaria, el **24 de enero de 2024** el TPI emitió una Sentencia Parcial en la que resolvió que la petición de expropiación sometida por el MA-Manatí cuenta con un uso fin público legal y legítimo. Por ello, hizo las siguientes determinaciones de hechos incontrovertidos que citamos *in extenso*:

1. El 14 de mayo de 2019, la Legislatura Municipal de Manatí, aprobó la Resolución Núm. 97, Serie 2018-2019, *"Para Autorizar a la Administración Municipal de Manatí a iniciar los trámites administrativos y de valoración para la adquisición de un inmueble en el Bo. Tierras Nuevas Salientes, Sector Mar Chiquita de Manatí; para otros fines relacionados"*.[8]
2. Mediante la Resolución Núm. 97, se estableció que era necesario que el Municipio adquiera el patrimonio manatieño descrito en la resolución para para garantizar el acceso a la playa Mar Chiquita y promover su preservación ecológica y turística.[9]

---

[7] Notificada el mismo día.
[8] De conformidad con la Regla 202 (B)(3) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 202 (B)(3), el TPI tomó conocimiento judicial de la Ordenanza #20, *supra,* y su enmienda, la Ordenanza #4, Serie 2022-2023 PON-5(8) del 24 de agosto de 2022.
[9] *Íd.*

3. A tales fines, el Municipio comenzó los trabajos para la identificación de los dueños de la propiedad y su valoración.[10]

4. El 19 de abril de 2022, la Legislatura Municipal de Manatí aprobó la Ordenanza Núm. 20, Serie 2021-2022, PRN-18(4), *"Autorizar al alcalde a adquirir la titularidad de la propiedad Finca Núm. 3017, inscrita en el Folio 175 del Tomo 570 de Manatí, Registro de la Propiedad de Manatí, que ubica en barrio Tierras Nuevas Salientes, Sector Mar Chiquita del Municipio de Manatí, mediante el proceso de expropiación forzosa y a suscribir la declaración para la adquisición y entrega material de ésta; para derogar la Resolución Núm. 97, Serie 2018-2019; y para otros fines".*

5. La Asamblea Municipal acreditó expresamente la utilidad y finalidad pública de la expropiación.[11]

6. En atención al mandato constitucional, la Asamblea Municipal reiteró la importancia de preservar la ecología del inmueble expropiado y reconoció que el acceso que éste permite a la ciudadanía a la playa Mar Chiquita hacía meritorio declararlo útil, necesario y conveniente a los fines municipales. Véase, 10mo "Por Cuanto".[12]

7. La Asamblea Municipal estableció que el Municipio promovía el acceso público a las costas y playas bajo su jurisdicción y la conservación de sus recursos naturales, a los fines de que estos espacios fueran públicos para el disfrute de todos sus constituyentes y de todos aquellos que visitan el Municipio en armonía con la conservación de la naturaleza. Véase, 10mo "Por Cuanto".[13]

8. La Asamblea Municipal dispuso que la adquisición de la propiedad objeto de esta acción constituye una necesidad pública útil, necesaria y conveniente a los fines municipales. Ello, en atención al mandato constitucional y estatutario de preservar la ecología de este inmueble, garantizar y promover el acceso que éste permite a la ciudadanía a la playa Mar Chiquita para el disfrute de todos, la conservación de sus escenarios naturales paisajistas, efectuar el uso dotacional cónsono con su fin público, y para que sirva de conector entre las reservas naturales de Tortuguero y Hacienda La Esperanza, entre otros fines. Véase, 3ra sección.[14]

9. La Asamblea Municipal decretó que la propiedad expropiada sería conocida como el Proyecto Parque Recreativo Pasivo Ecológico de la Reserva Natural de Mar Chiquita en Manatí. Véase, 3ra sección.[15]

10. La propiedad expropiada goza de un sinnúmero de elementos de interés con alto valor ecológico, ambiental y cultural, entre los que se encuentran: bosques o reservas de mangle negro y rojo, y Almendros; dunas; Humedales; acantilados; hábitat de tortugas marinas; hábitat del juey azul (Cardisoma guanhumi); habitat de la Boa Puertorriqueña (Chilabothrus inornatus); refugios de aves; sumideros; santuario de la Virgen del Carmen por

---

[10] *Íd.*
[11] *Íd.*
[12] *Íd.*
[13] *Íd.*
[14] *Íd.*
[15] *Íd.*

tiempo inmemorial; y hallazgos arqueológicos prehispánicos como petroglifos, entre estos el "Mural de Mar Chiquita", la Cueva Mar Chiquita conocida como "Las Golondrinas" y otros debidamente identificados sin nombre particular, residuarios entre estos, la "Playa de Mar Chiquita" y la "Virgen del Carmen", y otros hallazgos aislados debidamente identificados sin nombre particular.

11. Durante tiempo inmemorial, los distintos dueños de la propiedad expropiada han permitido libremente y sin interrupción el uso de la propiedad como acceso a la Playa Mar Chiquita.

12. La propiedad cuenta con veredas que son utilizadas por los visitantes para caminar por dentro del área boscosa.

13. Históricamente, los visitantes de la Playa Mar Chiquita han utilizado un área de la propiedad como estacionamiento.

14. La expropiación forzosa del parque público municipal objeto de este recurso promueve un fin público, y se encuentra reconocido expresamente en el Artículo 2.018 de la Ley Núm. 107, supra, y la sección 3 de la Ley Núm. 12, *supra.*

De conformidad a los hechos incontrovertidos antes citados, el TPI razonó:

> Surge como un hecho incontrovertido que la Asamblea Municipal de Manatí acreditó el fin público de forma expresa y en detalle, mediante la aprobación de la Ordenanza Núm. 20, supra. Esta expresó que la expropiación de epígrafe se hizo para garantizar el libre acceso a la Playa Mar Chiquita, la recreación pública, la preservación y conservación de los recursos naturales y su uso dotacional cónsono con su fin público. La Asamblea Municipal decretó que la propiedad expropiada sería conocida como el Proyecto Parque Recreativo Pasivo Ecológico de la Reserva Natural de Mar Chiquita en Manatí.
>
> Así también surge de los hechos incontrovertidos que la propiedad está afectada históricamente a un uso público, sea como área de estacionamiento, veredas para caminantes, área de acceso a la playa, etc. Así también, ha quedado demostrado que los terrenos expropiados han sido identificados con importantes recursos naturales e histórico-culturales para la ciudadanía.

En cuanto a la controversia de derecho planteada, el TPI expresó:

> En este caso, la ley establece que el Estado debe declarar un fin público que sea legal y válido. El tribunal reconoce el mandato constitucional en protección de estos terrenos para el beneficio general de la comunidad, según se describen en el artículo 2 de la Ley Núm. 120-2023, *"Ley para designar la Reserva Natural Mar Chiquita"* y en el Tomo 1, Capítulo 6, Regla 6.1 del Plan Sectorial de la Reserva Natural de Mar Chiquita en Manatí, Resolución JP-PSMCH. La finalidad declarada por la Asamblea Legislativa en la Ordenanza #20, *supra*, es cónsona con esta política pública. El Municipio, con la facultad conferida por ley, ejerció el poder del soberano de expropiar la propiedad privada objeto de este

pleito para el establecimiento de un parque público pasivo ecológico a la colindancia de la Playa Mar Chiquita.

En específico, el TPI abordó la oposición a la sentencia sumaria presentada por FDR Corp., y esos fines, resolvió lo siguiente:

> En su Oposición a la Solicitud de Sentencia Sumaria Parcial, F.D.R. 1500, Corp. expuso que existía controversia en cuanto a la existencia de un fin público debido a que: **(1)** no es necesaria la expropiación para la conservación de los recursos naturales ya que, por legislación y reglamentación, el área está protegida; **(2)** el Municipio propone utilizar la propiedad como parque ecológico pero ello es un subterfugio para utilizarla como un balneario público; **(3)** no existe seguridad en cuanto a si el Municipio podrá dar un mantenimiento adecuado a la propiedad expropiada; **(4)** el Municipio no ha presentado un plano o diseño conceptual del propuesto parque ecológico; y **(5)** existe una controversia de deslinde con el DRNA.
>
> En atención a los fundamentos esbozados por F.D.R. 1500, Corp., no le asiste la razón. No es función de este tribunal expresar opinión sobre la sabiduría o conveniencia de la medida adoptada por la Legislatura de Manatí y las otras leyes y reglamentos citados en la Ordenanza Núm. 20, supra, como lo es el Plan Sectorial de la RNMC.[16] Estos cuerpos legales, responsables de las protecciones argumentadas por F.D.R. 1500 Corp., son también los que permiten el uso dotacional por el Estado. Entre estos usos, está las instalaciones recreativas y *"permitir desarrollar un área recreativa en la playa mar chiquita, al mismo tiempo que se garantiza el libre disfrute de la playa sin la presencia desorganizada de vehículos privados"*. Tomo 1, Capítulo 6, Regla 6.1 del Plan Sectorial. Siendo ello así, la expropiación no solo tiene elementos de beneficio público y, sino que tiene un propósito útil y finalidad de carácter público, por cuanto, la cuestión en cuanto al beneficio que vaya de recibir el público debe ser resuelta por la Legislatura y no por el tribunal. *McCormick v. Marrero Juez, supra.*
>
> El establecimiento de un parque público es consistente con las leyes y reglamentación sobre el uso de la propiedad en cuestión y no está supeditado a la existencia de un plano o diseño conceptual. Como expresamos en las líneas anteriores, el tribunal solamente tiene jurisdicción para evaluar si el uso del destino de la propiedad expropiada tendrá un fin público y que se otorgue una justa compensación; nada más. Reiteramos que la sabiduría o forma en que el Estado, en este caso el Municipio, decida realizar el proyecto para darle forma al parque en la propiedad expropiada es un asunto ajeno a un pleito de expropiación. *McCormick v. Marrero Juez, supra.* El tribunal había alcanzado la anterior conclusión de derecho en su Resolución del 31 de agosto de 2022, al expresar que el fin público no excluye el cumplimiento de las normas

---

[16] Plan Sectorial para la Reserva Natural de Mar Chiquita en Manatí aprobada mediante la Resolución JP-PS-MCH y el Boletín Administrativo Núm. OE 2016-064, titulada *"Orden Ejecutiva para aprobar la delimitación y designación de la Reserva Natural de Mar Chiquita (RNMC) en el Municipio de Manatí, el Plan Sectorial de la RNMC, los nuevos distritos de ordenación del territorio y la forma urbana, y el Programa de Transferencia de Derechos de Desarrollo de la RNMC; para enmendar el Mapa de Clasificación y Calificación del Plan Territorial de Manatí; y para enmendar el Mapa de Clasificación del Plan de Uso de Terrenos de Puerto Rico".*

ambientales requeridas y que siempre estará sujeta al procedimiento de las agencias administrativas pertinentes.

El tribunal tampoco considerará planteamientos que no forma parte de los hechos presentados y propuestos por el Municipio de Manatí o F.D.R. 1500, Corp., en la solicitud de sentencia sumaria y/o su oposición. Aquellos argumentos traídos como opiniones de un perito de F.D.R. 1500, Corp., son especulaciones y conjeturas. Estos argumentos especulativos presentados como opinión de un designado perito no los convierten en hechos y tampoco contravienen los hechos apoyados en la reglamentación, documentación y declaraciones juradas. Especulaciones y conjeturas son insuficientes para rebatir presunción del fin público declarado por la legislatura municipal y, por ende, de una solicitud de sentencia sumaria. Al momento de determinar si procede una solicitud de sentencia sumaria, el tribunal solo toma en consideración documentos admisibles en evidencia que se acompañan con la solicitud y los documentos que se encuentran en el expediente del tribunal. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

En cuanto a la cabida o tamaño de terreno expropiado, el Municipio ha establecido reiteradamente que se propone expropiar 54,899.1466 metros cuadrados. No corresponde al tribunal hacer una determinación sobre la cantidad de terreno a expropiarse, porque ésta es una función que ejerce la legislatura. *McCormick v. Marrero Juez, supra.* De igual forma, el Tribunal de Apelaciones resolvió en su Resolución del 15 de diciembre de 2023 que, el asunto del deslinde *"en manera alguna afectan o menoscaban el poder el Estado, en este caso, el Municipio, de expropiar el predio en cuestión, sujeto, claro está, a que medie justa compensación por la propiedad expropiada"*. Forzosamente, hay que determinar que el deslinde en nada afecta el uso o fin público de la propiedad expropiada.

A tono con todo lo antes expresado, el TPI resolvió que la petición de expropiación contaba con un uso fin público legal y legítimo. Así, procedió a declarar *Ha Lugar* a la *Moción de Sentencia Sumaria Parcial* presentada por el MA-Manatí y denegó la solicitud de temeridad en contra de FDR Corp.[17] En consecuencia, ordenó la continuación de los procedimientos.

Inconforme, FDR Corp., el **9 de febrero de 2024** presentó una solicitud de reconsideración ante el TPI, pero la misma fue denegada el **6 de marzo de 2024**.[18] Razón por la cual, el **8 de abril de 2024**, la parte apelante presenta ante nos el recurso de certiorari y señala la comisión del siguiente error:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL (1) DETERMINAR MEDIANTE EL MECANISMO DE

---

[17] Además, el TPI expresó que, por no existir razón alguna para posponer dictar sentencia parcial y final sobre lo resuelto hasta la resolución total del pleito, ordenó el registro y la notificación de la presente Sentencia Parcial, conforme a la Regla 42.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. V. R. 42.3.

[18] La Orden fue notificada y archivada el 7 de marzo de 2024.

SENTENCIA SUMARIA QUE RESULTA INCONTROVERTIDO QUE EXISTE UN FIN PÚBLICO LEGÍTIMO POR PARTE DEL MUNICIPIO CUANDO EXISTEN CONTROVERSIAS SUSTANCIALES SOBRE HECHOS RELACIONADOS A LA CREDIBILIDAD DE LA PRUEBA PERICIAL RELACIONADOS A LA VIABILIDAD DEL FIN PÚBLICO PROPUESTO EN UNA FINCA QUE UBICA EN UNA RESERVA NATURAL; (2) Y EN SU CONSECUENCIA, AL NO ORDENAR LA CELEBRACIÓN DE UNA VISTA EVIDENCIARIA, EN LA CUAL FDR 1500 TENGA DERECHO A SER OÍDO CON RELACIÓN A SU PRUEBA PARA CONTROVERTIR EL FIN PÚBLICO INVOCADO POR EL MUNICIPIO DE MANATÍ Y EN DONDE LE SALVAGUARDEN LAS GARANTÍAS DEL DEBIDO PROCESO DE LEY, TODA VEZ QUE SE EXPONE A SER PRIVADA DE SU DERECHO CONSTITUCIONAL A LA PROPIEDAD PRIVADA.

-II-

-A-

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria, cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales.[19] Se considera un hecho material esencial *"aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable".[20]* Por lo tanto, procederá dictar una sentencia sumaria:

> [S]i las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que [,] como cuestión de derecho[,] el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[21]

Es decir, este mecanismo podrá ser utilizado en situaciones en las que la celebración de una vista o del juicio en su fondo resultare innecesaria, debido a que el tribunal tiene ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y solo le resta aplicar el derecho.[22] De

---

[19] 32 LPRA Ap. V, R. 36.3 (e); *Bobé v. UBS Financial Services*, 198 DPR 6, 19 – 20 (2017).

[20] *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 167 (2011).

[21] Regla 36.3 (e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (e).

[22] *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 17 – 18 (2015); *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).

manera, que un asunto no debe ser resuelto por la vía sumaria cuando:

> **(1)** existen hechos materiales y esenciales controvertidos; **(2)** hayan alegaciones afirmativas en la demanda que no han sido refutadas; **(3)** surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o **(4)** como cuestión de derecho no procede.[23]

La precitada Regla establece los requisitos de forma que debe satisfacer toda solicitud de sentencia sumaria.[24] El inciso (a) de la Regla 36.3 de Procedimiento Civil, dispone que la moción de la parte promovente deberá contener:

> **(1)** Una exposición breve de las alegaciones de las partes;
> **(2)** los asuntos litigiosos o en controversia;
> **(3)** la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> **(4)** una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> **(5)** las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> **(6)** el remedio que debe ser concedido.[25]

Asimismo, presentada una moción de sentencia sumaria, la parte promovida no deberá cruzarse de brazos ni descansar exclusivamente en meras afirmaciones o en las aseveraciones contenidas en sus alegaciones.[26] Es preciso que la parte promovida formule —con prueba adecuada en derecho— una posición sustentada con contradeclaraciones juradas y contradocumentos que refuten los hechos presentados por el promovente.[27] Por consiguiente, cualquier duda que plantee sobre la existencia de hechos materiales en controversia no será suficiente para derrotar la procedencia de la solicitud.[28] Después de todo, *"[l]a etapa procesal*

---

[23] *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, *supra*, a la pág. 167. Énfasis nuestro.
[24] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 431 (2013).
[25] 32 LPRA Ap. V, R. 36.3 (a). Énfasis nuestro.
[26] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 785 (2016).
[27] *Ramos Pérez v. Univisión*, 178 DPR 200, 214 – 215 (2010).
[28] *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26 (2014).

*para presentar prueba que controvierta los hechos propuestos por una parte en su Moción de Sentencia Sumaria no es en el juicio, sino al momento de presentar una Oposición a la Moción de Sentencia Sumaria, según lo exige la Regla 36 de Procedimiento Civil".[29]*

En ese sentido, la parte promovida también tiene la obligación de cumplir con las exigencias enunciadas en las cláusulas (1), (2) y (3) del inciso (a) de la Regla 36.3 de Procedimiento Civil.[30] Le corresponde citar con especificidad cada uno de los párrafos, según enumerados en la solicitud de sentencia sumaria, que entiende se encuentran en controversia, al igual aquellos que no.[31] Dicha tarea, deberá ser realizada de forma tan detallada y específica como lo haya hecho la parte promovente y haciendo referencia a la prueba admisible en la cual se sostiene la impugnación, con cita a la página o sección pertinente.[32]

Ahora bien, la inobservancia de las partes con la normativa pautada tiene repercusiones diferentes para cada una. Al respecto, nuestro Tribunal Supremo ha señalado que:

> [P]or un lado, si quien promueve la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. A contrario *sensu*, si la parte opositora no cumple con los requisitos, el tribunal puede dictar sentencia sumaria a favor de la parte promovente, si procede en derecho. Incluso, si la parte opositora se aparta de las directrices consignadas [en la regla] el tribunal podrá no tomar en consideración su intento de impugnación [de los hechos ofrecidos por el promovente].[33]

En ese mismo orden, nuestra jurisprudencia ha establecido que el **deber de numeración** no constituye un mero formalismo ni es un simple requerimiento mecánico sin sentido.[34] Este esquema le confiere potestad a los tribunales para excluir aquellos hechos

---

[29] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 122 (2015).
[30] Regla 36.3 (b)(1) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (b)(1).
[31] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 432.
[32] *Id.; Burgos López et al. v. Condado Plaza, supra*, a la pág. 17.
[33] *Meléndez González et al. v. M. Cuebas, supra*, a la pág. 111.
[34] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 434.

propuestos que no hayan sido enumerados adecuadamente o que no hayan sido debidamente correlacionados con la prueba.[35]

Entretanto, es menester señalar que al ejercer nuestra función revisora sobre decisiones en las que se aprueba o deniega una solicitud de sentencia sumaria, nos encontramos en la misma posición que los foros de primera instancia.[36] Al tratarse de una revisión de *novo*, debemos ceñirnos a los mismos criterios y reglas que nuestro ordenamiento les impone a los foros de primera instancia, y debemos constatar que los escritos de las partes cumplan con los requisitos codificados en la Regla 36 de Procedimi*ento* Civil, *supra*.[37] A tenor con lo expuesto, el Tribunal Supremo insular ha pautado lo siguiente:

> [...] el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. [...]
>
> [Por el contrario], de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[38]

Desde luego, el alcance de nuestra función apelativa al intervenir en estos casos no comprenderá la consideración de prueba que no fue presentada ante el foro de primera instancia ni la adjudicación de hechos materiales en controversia.[39]

**-B-**

El derecho fundamental a disfrutar de la propiedad privada es uno expresamente reconocido en la Constitución del Estado Libre Asociado de Puerto Rico (en adelante, Const. E.L.A.).[40] Ahora, en

---

[35] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 433.
[36] *Meléndez González et al. v. M. Cuebas, supra*, a la pág. 118; *Vera v. Dr. Bravo*, 161 DPR 308 (2004).
[37] *Meléndez González et al. v. M. Cuebas, supra*, a la pág. 118.
[38] *Meléndez González et al. v. M. Cuebas, supra*, a las págs.,118-119.
[39] *Id.* Énfasis nuestro.
[40] Art. II, Sec. 7, Const. E.L.A., LPRA, Tomo 1. En lo pertinente, dispone: *Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad **y al disfrute de la propiedad**. No existirá la pena de muerte. Ninguna persona será privada de su libertad **o propiedad** sin debido proceso de ley, ni se*

repetidas ocasiones se ha aclarado que no es un derecho absoluto, pues está sujeto al poder inherente del Estado de establecer restricciones sobre la propiedad de los ciudadanos. A través del poder inherente, el Estado tiene facultad para adquirir la titularidad de bienes privados a través de la expropiación forzosa, o también conocida como dominio eminente.[41]

No obstante, al examinar el Art. II, Sec. 9 de la Const. E.L.A., encontramos que limita la facultad del Estado al garantizarle a la persona que: *"[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley"*.[42] La citada protección constitucional cobra efectividad en la Ley de Expropiación Forzosa,[43] y la Regla 58 de Procedimiento Civil.[44] Conforme a la Ley de Expropiación Forzosa, toda acción o procedimiento de expropiación forzosa iniciado por el Estado deberá ser tener un fin y aprovechamiento público.

En ese sentido, la Asamblea Legislativa de Puerto Rico tiene facultad para conservar y proteger los recursos naturales con fines públicos válidos y reconocidos expresamente en el artículo VI, sección 19 de la Const. del E.L.A. de Puerto Rico.[45]

Bajo ese palio fue aprobada la Ley Núm. 120 de 24 de octubre de 2023, conocida como "Ley para designar la Reserva Natural Mar Chiquita", (en adelante, Ley Núm. 120-2023).[46] Esta facultad

---

*negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. **Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo**.*

[41] *Mun. De Guaynabo v. Adquisición M2*, 180 DPR 206, 216 (2010).

[42] Art. II, Sec. 9, Const. E.L.A., LPRA, Tomo 1.

[43] *Ley General de Expropiación Forzosa* de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.*

[44] Reglas de Procedimiento Civil de PR, 32 LPRA Ap. V, R. 58.

[45] Art. VI, Sec. 19, Const. E.L.A., LPRA, Tomo 1. En lo pertinente, se dispone*: Será política pública del Estado Libre Asociado la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad.* [...].

[46] La Ley Núm. 120-2023 tiene el propósito de designar la Reserva Natural Mar Chiquita en la zona costera del norte de Puerto Rico, en el Municipio de Manatí; establecer la política pública sobre la protección de la Reserva Natural; reconocer una presunción de validez de todos los trámites administrativos previamente

legislativa ha sido avalada en el caso de *McCormick v. Marrero Juez,*
64 DPR 260, 267 (1944), cuando el Tribunal Supremo de Puerto Rico
expresó, en un caso de expropiación forzosa, lo siguiente:

> La Legislatura tiene amplia discreción para determinar qué es lo que constituye un fin público y para tomar aquellas medidas que a su juicio promuevan el bienestar de la comunidad. No es función de los tribunales la de expresar opinión sobre la sabiduría o conveniencia de una medida Legislativa. Si ésta contiene elementos de beneficio público y el propósito que se trata de realizar es de carácter público, la cuestión en cuanto al beneficio que vaya de recibir el público debe ser resuelta por la Legislatura y no por los tribunales. La presunción en favor del fin público que se propone alcanzar, es más fuerte cuando la expropiación se hace a nombre del gobierno y no por una corporación privada.

De igual modo, las legislaturas municipales gozan de una
amplia discreción para determinar qué constituye un fin público y
para tomar aquellas medidas que, a su juicio, promuevan el
bienestar de la comunidad. Razón por la cual, los tribunales solo
pueden evaluar que el bien expropiado se dedique a un fin público
y no sobre su idoneidad. Así, se reafirmó el Tribunal Supremo de
Puerto Rico al disponer lo siguiente:

> [u]na vez el titular del dominio es debidamente notificado del procedimiento de expropiación, este tiene la oportunidad de presentar una contestación al tribunal y presentar las defensas y objeciones que tenga, tanto sobre el carácter público del uso a que se destinará la propiedad, como la cuantía declarada como justa compensación. Íd., a la pág. 218. [Con relación] a la evaluación que debe realizar el juzgador sobre la petición de expropiación forzosa, hemos sostenido que "[c]omo la facultad de expropiar es un atributo inherente a la soberanía del Estado, las únicas limitaciones que pueden reconocerse a su ejercicio son que la propiedad se dedique a un uso o fin público y se le satisfaga al demandado una justa compensación por ella". [...]

> Así pues, [u]na vez establecido que la expropiación requerida por el Estado en efecto tiene un fin público, "no corresponde a los tribunales revisar las determinaciones sobre la naturaleza o extensión del derecho a adquirirse, la cantidad de terreno a expropiarse, la necesidad o lo adecuado del sitio en particular, porque ésta es una función que ejerce la [L]egislatura bien directamente o delegándola en agencias y funcionarios".[47]

---

realizados para adoptar la Reserva Natural Mar Chiquita; ordenar a la Junta de Planificación realizar un trámite expedito, salvaguardando el debido proceso de ley, para cumplir con lo promulgado en esta Ley; y para otros fines relacionados.
[47] *Mun. de Guaynabo v. Adquisición M2,* 180 DPR, 206, 218, (2010).

**-C-**

Por último, los tribunales apelativos reconocen la difícil tarea y retos que recaen sobre los tribunales de instancia en sus esfuerzos por acelerar los procedimientos y administrar efectivamente un número creciente de casos, tanto en términos cuantitativos como en su complejidad. Como norma general, nos encargamos de examinar cómo los tribunales inferiores aplican el derecho a los hechos particulares de cada caso, y si dicha aplicación fue o no correcta. Al realizar tan delicada función, no debemos intervenir con el ejercicio de su discreción, salvo se demuestre que hubo un craso abuso de discreción, que el tribunal actuó con prejuicio o parcialidad, o se equivocó en la interpretación o aplicación de cualquier norma procesal o derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.[48]

**-III-**

En **primer orden**, estamos en la misma posición que el TPI para atender una solicitud de sentencia sumaria, por lo cual procedemos a resolverla. En ese sentido, adoptamos por referencia las catorce (14) determinaciones de hechos incontrovertidos que esbozó el TPI en la *Sentencia Parcial,* por entender que están sustentados en la prueba que se acompañó.

Como foro apelativo, nos compete determinar si las partes cumplieron con los requisitos que impone la referida Regla 36 de Procedimiento Civil.[49] Un análisis de los documentos sometidos nos lleva a concluir que el MA-Manatí cumplió con todos los trámites procesales correspondientes a la sentencia sumaria, sin embargo, FDR Corp., no cumplió con ello.

---

[48] Véase, *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009); *Ramírez Ferrer v. Conagra Foods P.R.*, 175 DPR 799, 810 (2009); *Zorniak v. Cessna*, 132 DPR 170, 182 (1992); *Pueblo v. Cabán Torres*, 117 DPR 645, 657 (1986); *Lluch v. España Service Sta.*, 117 DPR 729 (1986).
[49] 32 LPRA Ap. V, R. 36.

En específico, la parte apelada cumplió con enumerar los hechos esenciales y pertinentes, y sostener sus alegaciones con prueba admisible en evidencia. En cambio, la parte apelante descansó en la Enmienda: Informe Pericial de la Sra. Ana Barea Rechani de abril de 2023 y la deposición tomada a ésta el 14 de junio de 2023; donde, en síntesis, expuso su opinión profesional sobre la carencia del fin público de la expropiación forzosa y la viabilidad del proyecto propuesto.

En **segundo orden**, nos corresponde determinar si el TPI incidió al declarar sumariamente el fin público de la expropiación forzosa y con ello violentó el debido proceso de ley de la parte apelante al no concederle una vista evidenciaria. No tiene razón.

De entrada, la oposición a la sentencia sumaria presentada por FDR Corp., no controvierte los hechos esenciales y materiales sobre el fin público y viabilidad expresada por la Asamblea Legislativa de Puerto Rico en la "Ley para designar la Reserva Natural Mar Chiquita",[50] ni en ninguna de las determinaciones, antes reseñadas, de la Asamblea Municipal del MA-Manatí.

Es decir, una vez revisada la legislación y propuesta antes mencionadas sobre la Reserva Natural Mar Chiquita, no le corresponde a los tribunales revisar las determinaciones sobre la naturaleza o extensión del derecho a adquirirse, la cantidad de terreno a expropiarse, la necesidad o lo adecuado del sitio en particular, pues esa es una función que ejerce la Legislatura, bien directamente o delegándola en agencias y funcionarios.[51]

Razón por la cual, resolvemos que la Sentencia Sumaria Parcial apelada es una correcta y no constituye un error en la interpretación o aplicación del derecho procesal o sustantivo. Por ende, resolvemos confirmar la misma.

---

[50] Ley Núm. 120 de 24 de octubre de 2023.
[51] *Mun. de Guaynabo v. Adquisición M2, supra,* pág. 218.

## -IV-

Por los fundamentos antes expuestos, resolvemos **confirmar** la Sentencia Sumaria Parcial apelada.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones